IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
MISSOULA DIVISION

_____

| | |
|---|---|
| MICHAEL PETERSON, and<br>MICHAEL PETERSON AS THE<br>PERSONAL REPRESENTATIVE<br>FOR THE ESTATE OF JOSHUA<br>PETERSON,<br><br>              Plaintiffs,<br><br>  vs.<br><br>TIME INSURANCE COMPANY,<br>ASSURANT HEALTH,<br>JOHN ALDEN LIFE INSURANCE<br>COMPANY, AETNA US HEALTH CARE,<br>AETNA HEALTH & LIFE INSURANCE<br>COMPANY, and JOHN DOES 1, 2, and 3,<br><br>              Defendants. | CV 11-81-M-DWM-JCL<br><br><br><br>FINDINGS AND<br>RECOMMENDATION<br>OF UNITED STATES<br>MAGISTRATE JUDGE |

_____

Plaintiff Michael Peterson ("Peterson") brings this action on his own behalf and on behalf of his deceased son, alleging that the Defendants wrongfully denied

and improperly processed claims for benefits under various health insurance policies. Defendant Aetna Health & Life Insurance Company's ("Aetna") has moved for summary judgment on ERISA preemption grounds. For the reasons set forth below, Aetna's motion should be granted.

I. **Background**[1]

Plaintiff Michael Peterson ("Peterson") was working as a security guard for Securitas Security Services USA, Inc. ("Securitas") when, in 2007, he became a participant in a Group Accident and Health Insurance Policy No. 360001 ("Policy") underwritten and issued by Aetna. Dkt. 67, ¶¶ 1 & 2; 67-1. Securitas was the Policyholder and the Plan Sponsor. Dkt. 67-1, at 1; 67-2; 67-4. Peterson resigned his employment with Securitas sometime prior to February of 2008. Dkt. 77-3, at ¶ 11.

Peterson submitted multiple claims for benefits under the Policy for medical services he received during the 2008 calendar year. Dkt. 40-2. Peterson commenced this action in May 2011, alleging that Aetna wrongfully denied and improperly processed his claims. Dkt. 1. Peterson asserts claims against Aetna for

---

[1] Because Aetna is the sole moving defendant, the following background sets forth only those facts that are relevant to Aetna's motion. The Court will address Defendant Time Insurance Company's, Assurant Health's, and John Alden Life Insurance Company's Motion to Dismiss and Motion for Summary Judgment by way of a separate Findings & Recommendation.

breach of contract (Count I), violation of Montana's Unfair Trade Practices Act (Count II), tortious breach of statutory duties (Count III), constructive fraud and breach of fiduciary duties (Count IV), negligent infliction of emotional distress (Count V), and intentional infliction of emotional distress (Count VI). Dkt. 51.

Aetna has moved for summary judgment on the ground that Peterson's exclusively state law claims are preempted by the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001 et seq.

## II. Applicable Legal Standards

Under Federal Rule of Civil Procedure 56(a), a party is entitled to summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." The party seeking summary judgment bears the initial burden of informing the Court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of any genuine issue of material fact. *Celotex Corp. v. Cattrett*, 477 U.S. 317, 323 (1986). A movant may satisfy this burden where the documentary evidence produced by the parties permits only one conclusion. *Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 251 (1986).

Once the moving party has satisfied its initial burden with a properly

supported motion, summary judgment is appropriate unless the non-moving party designates by affidavits, depositions, answers to interrogatories or admissions on file "specific facts showing that there is a genuine issue for trial." *Celotex*, 477 U.S. 317, 324 (1986). The party opposing a motion for summary judgment "may not rest upon the mere allegations or denials" of the pleadings. *Anderson*, 477 U.S. at 248.

In considering a motion for summary judgment, the court "may not make credibility determinations or weigh the evidence." *Reeves v. Sanderson Plumbing Prods.*, 530 U.S. 130, 150 (2000); *Anderson*, 477 U.S. at 249-50. The Court must view the evidence in the light most favorable to the non-moving party and draw all justifiable inferences in the non-moving party's favor. *Anderson*, 477 U.S. at 255; *Betz v. Trainer Wortham & Co., Inc.*, 504 F.3d 1017, 1020-21 (9th Cir. 2007).

### III. Discussion

ERISA provides "a uniform regulatory regime over employee benefit plans" and "includes expansive preemption provisions." *Aetna Health Inc. v. Davila*, 542 U.S. 200, 208 (2004). The general preemption clause, § 514(a), states that ERISA "shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan." 29 U.S.C. § 1144(a). This preemption provision thus requires two things: (1) the policy or plan at issue must constitute an

"employee benefit plan," and (2) the plaintiff's state law claims must "relate to" that employee benefit plan.

Aetna first argues that the Policy at issue here plainly constitutes an "employee benefit plan" within the meaning of ERISA. ERISA defines an "employee welfare benefit plan," in relevant part, as "any plan, fund, or program...established or maintained by an employer...for the purpose of providing for its participants or their beneficiaries, through the purchase of insurance or otherwise, (A) medical, surgical, or hospital care benefits, or benefits in the event of sickness, accident, disability, [or] death..." 29 U.S.C. § 1002(1)(A).

An employer "can establish an ERISA plan rather easily." *Credit Managers Ass'n of Southern Calif. v. Kennesaw Life and Acc. Ins. Co.*, 809 F.2d 617, 625 (9th Cir. 1987). "Even if an employer does no more than arrange for a 'group-type insurance program,' it can establish an ERISA plan, unless it is a mere advertiser who makes no contributions on behalf of its employees." *Credit Managers*, 809 F.2d at 625. According to the Ninth Circuit, an ERISA plan exists "if from the surrounding circumstances a reasonable person can ascertain the intended benefits, a class of beneficiaries, the source of financing, and procedures for receiving benefits." *Carver v. Westinghouse Hanford Co.*, 951 F.2d 1083, 1086 (9th Cir. 1991). If these criteria are satisfied, an employee welfare benefit plan "may be

created even without a formal intentional plan adoption." *Carver*, 951 F.2d at 1086.

Aetna has pointed to ample evidence showing that these criteria are satisfied here. The Policy and Plan Booklet/Certificate of Coverage ("Plan Document") clearly identify the intended benefits, which include facility indemnity benefits and medical expense benefits, and describe those benefits in detail. Dkt. 67-1, 67-2. A Summary of Coverage document and a Benefits Summary provide additional detail regarding the coverage and benefits available. Dkt. 67-6, 67-7. The Policy and associated documents make it equally clear that Securitas's employees are the intended beneficiaries, and that Securitas paid the coverage premiums from employee payroll deductions that accounted for 100% of the cost of coverage. Dkt. 67-1, at 4; 67-6, at 1, 2 & 7, 67-2, at 22. Finally, the procedures for receiving benefits are set forth in detail in the Plan Document. Dkt. 67-2, at 37-39. As the designated policyholder and plan sponsor, Securitas established and maintained the Policy on behalf of its employees. Because all of the requisite criteria are thus satisfied, the Policy constitutes an ERISA plan unless it falls within the so-called "safe harbor" regulation that exempts otherwise qualified plans from coverage.

For the safe harbor provision to exempt a group insurance plan from ERISA coverage, all four of the following criteria must be satisfied:

(1) No contributions are made by an employer or employee organization;

(2) Participation [in] the program is completely voluntary for employees or members;

(3) The sole functions of the employer or employee organization with respect to the program are, without endorsing the program, to permit the insurer to publicize the program to employees or members, to collect premiums through payroll deductions or dues checkoffs and to remit them to the insurer; and

(4) The employer...receives no consideration in the form of cash or otherwise in connection with the program, other than reasonable compensation, excluding any profit, for administrative services actually rendered in connection with payroll deductions or dues checkoffs.

29 C.F.R. § 2510.3-1(j).

Focusing on the third criteria, Aetna points to evidence establishing that Peterson's employer, Securitas, performed several functions in addition to collecting premiums and allowing Aetna to publicize the program to employees. As the Policyholder and Plan Sponsor, for example, Securitas was responsible for defining the "classes of employees" eligible for coverage. Dkt. 67-1, at 4. Securitas was also responsible for determining the particular "plan of benefits" that would be available to its employees,[2] and could request that "[t]he premium charges for any coverage" under the policy be refigured based on such factors as the ages of its employees and the amounts of insurance in force. Dkt. 67-1, at 21.

---

[2] Dkt. 67-2, at 22.

Securitas had the unilateral authority to terminate the Policy "as to any or all coverage of all or any class of employees..." Dkt. 67-1, at 24. And by written agreement with Aetna, Securitas could amend the Policy to reduce, eliminate, or increase benefits or coverage without the consent of its employees. Dkt. 67-1, at 14-15.

All of these various functions are inconsistent with the third safe harbor criteria, which requires that the employer's functions be limited to collecting premiums and allowing the insurer to publicize the program. Because at least one of the four safe harbor requirements is not satisfied, the Policy is not exempted from coverage and is subject to ERISA. *See e.g. Stuart v. UNUM Life Ins. Co. of America*, 217 F.3d 1145, 1150 (9th Cir. 2000) (stating that "an employer's failure to satisfy one of the safe harbor's four requirements conclusively demonstrates that an otherwise qualified group insurance plan is an employee welfare benefit plan subject to ERISA."); *Sarraf v. Standard Ins. Co.*, 102 F.3d 991, 993 (9th Cir, 1996).

Peterson offers nothing in response to Aetna's motion that would show otherwise, and in fact concedes that when he "was employed with Securitas [he] had a group policy of health insurance through that employer." Dkt. 77, at 4. While Peterson does not appear to dispute that the Policy constitutes an ERISA

plan, he argues that the Policy is irrelevant and his "claims are not related in any way to that period of time when [he] was employed with Securitas and had a group health insurance plan."[3] Dkt. 77, at 4. Rather, Peterson maintains that he was insured under a private, individual health insurance policy that he purchased from Aetna after his resigned from his job with Securitas. Peterson argues that all of his claims against Aetna relate to that private, individually purchased insurance policy and have nothing to do with Securitas's ERISA plan.

While Peterson claims to have purchased private health insurance coverage from Aetna once he stopped working for Securitas, he has not submitted a copy of any insurance policy for the Court's review.[4] The only evidentiary material Peterson provides in opposition to Aetna's motion is his own affidavit. Dkt. 77-3. As that affidavit makes clear, Peterson paid for COBRA continuation coverage after leaving his job with Securitas. Peterson explains that "[h]aving previously

---

[3] Before reaching this argument, Peterson opens his response brief by once again seeking my disqualification under 28 U.S.C. § 455(a). In doing so, he simply reiterates the same arguments he made in support of his September 29, 2011, Motion to Recuse the Magistrate. Dkt. 35. To the extent Peterson's response brief can be construed as a renewed motion for my disqualification, that motion is denied for all of the reasons set forth in my October 21, 2011, Order. Dkt. 45.

[4] Nor has Peterson submitted a Statement of Genuine Issues as required by Local Rule 56.1(b).

been insured with Aetna while employed, I was eligible for COBRA coverage." Dkt. 77-3, ¶ 7. Peterson states that after he resigned, he "privately paid for COBRA coverage with Aetna" and "personally paid for health insurance coverage with Aetna beginning February 2008." Dkt. 77-3, at ¶¶ 10-11.

Congress enacted the Consolidated Omnibus Budget Reconciliation Act of 1986 ("COBRA"), 29 U.S.C. §§ 1161 et seq. "to eliminate gaps in insurance coverage that could accompany changes in or loss of employment." *Teweleit v. Hartford Life and Acc. Ins. Co.,* 43 F.3d 1005, 1008 (5th Cir. 1995). To that end, COBRA requires that a plan sponsor of a group health plan allow a "qualified beneficiary who would lose coverage under the plan as the result of a qualifying event" like the termination of employment to elect "continuation coverage under the plan." 29 U.S.C. §§ 1161(a) & 1163(2). COBRA thus provides "an alternative to prohibitively expensive individual health care insurance policies for those people who, on account of certain events like...the loss of a job, [are] at risk of losing their employment-related group health insurance." *Phillips v. Saratoga Harness Racing, Inc.*, 240 F.3d 174, 179 (2d Cir. 2001).

COBRA continuation coverage must be identical to the coverage provided for plan beneficiaries who have not suffered a qualifying event. 29 U.S.C. § 1162(1). And "[i]f coverage is modified under the plan for" those beneficiaries

who have not lost their employment, "such coverage shall also be modified in the same manner for" continuing coverage beneficiaries. 29 U.S.C. § 1162(1). As the Ninth Circuit describes it, an individual who has COBRA "continuation coverage" is one who "continue[s] to participate in the employer's ERISA plan by paying the premiums himself." *Waks v. Empire Blue Cross/Blue Shield*, 263 F.3d 872, 877 (9th Cir. 2001) (citing *Qualls v. Blue Cross of Cal., Inc.*, 22 F.3d 839, 841 (9th Cir. 1994).

By Peterson's own description, that is just what happened here – beginning in February 2008 he "privately paid for COBRA coverage with Aetna" after resigning from his employment with Securitas. Dkt. 77-3, ¶¶ 10-11. Other materials of record confirm that Peterson continued to participate in Securitas's ERISA plan during the 2008 calendar year despite the fact that he was no longer working for the company. In particular, the many Explanation of Benefits forms Peterson received from Aetna for the multiple claims he submitted during the 2008 calendar year reflect that he was still covered under Securitas's ERISA plan. Dkt. 40-2. The Explanation of Benefit forms all refer to the "Group" as "360001 Securitas Security Services," and reflect that Aetna paid benefits under the Policy, which is identified on its face by "Policy Number 360001." Dkt. 40-2; 67-1, at 1. The undisputed evidence of record thus establishes that Peterson was receiving

self-paid COBRA continuation coverage when he submitted the claims he maintains were wrongfully denied by Aetna.

The Ninth Circuit has made clear that self-paid COBRA continuation coverage is governed by ERISA and subject to its preemption rules. *See e.g. Qualls v. Blue Cross of Cal., Inc.*, 22 F.3d 839 (9th Cir. 1994). In *Qualls*, the insured elected to continue participation in his employer-sponsored health insurance plan by paying premiums after leaving his employment due to an injury. *Qualls,* 22 F.3d at 841. The insurer characterized that continuing coverage as COBRA continuing benefits. *Qualls*, 22 F.3d at 842 n. 1. The insured argued that "the policy was not covered by ERISA because once he was no longer employed[,]...his continued coverage was based on a simple private policy, unrelated to employment." *Qualls*, 22 F.3d at 843 n. 4.

The Ninth Circuit rejected that argument because the insured's "continuing eligibility was based solely on his previous employment," and concluded that "[i]f the policy was governed by ERISA when he was [employed], it continued to be governed by ERISA once he left." *Qualls*, 22 F.3d at 843 n.4. Having so concluded, the *Qualls* court agreed with the lower court's determination that the insured's "state law claims were preempted" by ERISA. *Qualls*, 22 F.3d at 844. See also *Peterson v. American Life & Health Ins. Co.*, 48 F.3d 404, 408 (9th Cir.

1995).

Here, as in *Qualls*, the undisputed evidence of record demonstrates that Peterson's continuing eligibility for coverage under the Policy was based solely on his previous employment with Securitas. That Peterson paid for that continuing coverage himself changes nothing. Because the Policy was governed by ERISA when Peterson was employed by Securitas, "it continued to be governed by ERISA once he left." *Qualls*, 22 F.3d at 843 n.4.

To the extent Peterson maintains that self-paid COBRA continuation coverage is somehow exempt from ERISA under the safe harbor regulations he is mistaken. As discussed above, Securitas performed several functions with respect to the Policy that were inconsistent with the third safe harbor requirement. As the Explanation of Benefit forms from 2008 show, the Policy was in effect while Peterson was receiving continuation coverage, which means that Securitas was still performing its functions as Policyholder and Plan Sponsor during that period. And as COBRA specifically contemplates, Securitas would have continued to perform an array of administrative functions while Peterson was receiving continuation coverage. For example, COBRA requires that an employer provide continuation coverage identical to that provided under the plan, and provides that if the employer is authorized to modify coverage under the plan it may do the same

with respect to continuation coverage. 29 U.S.C. § 1162(1). The fact that Peterson was receiving self-paid continuation coverage under the Policy does not somehow change the fact that the Policy constitutes an employee welfare benefit plan within the meaning of ERISA.

If Peterson's state law claims all "relate to" that plan, then they are preempted by ERISA. 29 U.S.C. § 1144(a). "Generally speaking, a common law claim 'relates to' an employee benefit plan governed by ERISA 'if it has a connection with or reference to such a plan.'" *Providence Health Plan v. McDowell*, 385 F.3d 1168, 1172 (9th Cir. 2004) (quoting *New York State Conference of Blue Cross & Blue Shield Plans v. Travelers Ins. Co.*, 514 U.S. 645, 655-56 (1995)). A common law claim can be said to have "reference to" an ERISA plan if it "is premised on the existence of an ERISA plan" and if "the existence of the plan is essential to the claim's survival." *Providence*, 385 F.3d 1168, 1172 (9th Cir. 2004). For purposes of determining whether a claim has a "connection with" an employee benefit plan, the Ninth Circuit uses a relationship test, under which a common law claim is preempted if it "bears on an ERISA-regulated relationship, e.g., the relationship between plan and plan member, between plan and employer, between employer and employee." *Paulsen v. CNF Inc.*, 559 F.3d 1061, 1082 (9th Cir. 2008) (quoting *Providence,* 385 F.3d at 1172).

The Amended Complaint asserts state law claims against Aetna for breach of contract, violation of Montana's Unfair Trade Practices Act, tortious breach of statutory duties, constructive fraud and breach of fiduciary duties, and negligent and intentional infliction of emotional distress. Dkt. 51. All of these claims "relate to" an ERISA plan because they are premised on Peterson's allegations that Aetna wrongfully denied and improperly processed claims for health benefits under the Policy. Peterson offers no argument to the contrary in response to Aetna's motion.[5] Because Peterson's state law claims relate to an ERISA plan, they are preempted under § 514(a), and are properly dismissed.

## III. Conclusion

Based on the foregoing,

IT IS RECOMMENDED that Aetna's Motion for Summary Judgment be GRANTED and judgment be entered accordingly, but that Peterson be given a

---

[5] Peterson has also filed an unauthenticated audio recording of two voicemail messages left on his telephone by an Aetna representative. Peterson claims these voicemail messages "document the Defendants' tortious actions" and "the negligent and intentional distress the Defendants perpetrated on the hurt and sick Plaintiffs." Dkt. 79, at 2. Plaintiffs claim the "audio recordings confirm that the Defendants had full knowledge of the Plaintiffs as insured and yet fraudulently denied legitimate claims" and "exemplify the Defendants' violations of the Unfair Trade Practices Act." Dkt. 79, at 2. Assuming the recordings could be properly authenticated, their substance is of no relevance to the issue of whether Peterson's state law claims are preempted by ERISA.

reasonable period of time to amend and advance any claim for relief he may have under ERISA.[6]

Dated this 15th day of February, 2012

    /s/ Jeremiah C. Lynch
Jeremiah C. Lynch
United States Magistrate Judge

---

[6] In its opening brief, Aetna asserted that "Aetna Life Insurance Company", rather than "Aetna Health & Life Insurance Company" as presently designated in the Amended Complaint, is the proper defendant. Dkt. 66, at 3 n.1. Aetna also explained that "Aetna US Health Care" is not, and has never been, an existing legal entity. Dkt. 66, at 3 n. 1. Peterson has not responded to Aetna's assertions. Aetna thus asks that "Aetna Life Insurance Company" be substituted for "Aetna Health Life Insurance Company" and "Aetna US Health Care" be dismissed. Dkt. 80, at 13. Unless Peterson comes forward with some evidence to the contrary within the time period provided for objecting to these Findings and Recommendation, Aetna's request should be granted.