# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MONTANA
# MISSOULA DIVISION

_____

| | |
|---|---|
| MICHAEL PETERSON, | CV 11-81-M-DWM-JCL |
| Plaintiff, | |
| vs. | |
| TIME INSURANCE COMPANY, ASSURANT HEALTH, JOHN ALDEN LIFE INSURANCE COMPANY, AETNA US HEALTH CARE, AETNA HEALTH & LIFE INSURANCE COMPANY, and JOHN DOES 1, 2, and 3, | FINDINGS &RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE |
| Defendants. | |

_____

On March 8, 2012, the Court issued an Order and Findings and Recommendations, recommending that the motions to dismiss and for summary judgment filed by Defendants Time Insurance Company, Assurant Health, and John Alden Life Insurance Company (collectively "John Alden") be granted with one caveat. The Court deferred issuing a recommended ruling on the question of whether or not Plaintiff Michael Peterson ("Peterson") could pursue a bad faith or breach of contract claim based on the two checks he submitted at the February 27, 2012, motion hearing. The Court allowed the parties to file additional briefing and

supplement the record.

The two checks at issue are dated October 11, 2011, and were issued by John Alden payable to First Choice Medical Walk-In Clinic. One check was for payment of $6.75 on a $45.00 claim with an October 31, 2009, service date , and one was for payment of $3.75 on a $25.00 claim with a September 21, 2009. Dkt. 93.

In conjunction with its supplemental brief, John Alden filed a second declaration from claims processing supervisor Kisha Banks-Matthews specifically addressing these two particular claims. Dkt. 101-1. As she did in her original declaration, Banks-Matthews explains that Peterson contacted John Alden in August 2011 and asked the company to review some of his prior claims. Dkt. 101-1, ¶ 2. During the course of that review, John Alden received additional medical records indicating that Peterson had a newly-diagnosed condition. Dkt. 101-1, ¶ 2. Thus, in October 2011, John Alden reviewed all of Peterson's past claims for coverage to determine whether the services described in any of those claims might relate to his newly-diagnosed condition. Dkt. 101-1, ¶ 3.

As the result of that review, John Alden reprocessed several claims, including the two at issue here. According to Banks-Matthews, John Alden had originally paid the two claims in November 2009 at the non-participating provider

rate (65%). Dkt. 101-1, ¶ 4. John Alden based that original payment decision on the information it had at the time. Dkt. 101-1, ¶ 5. In October 2011, after receiving medical records regarding Peterson's new diagnosis, John Alden reprocessed those claims at the higher participating provider rate (80%). Dkt. 101-1, ¶ 5. John Alden determined that the two claims "might relate to Peterson's newly-diagnosed condition, and [] wanted to give the benefit of the doubt to [its] insured." Dkt. 101-1, ¶ 5. As a result, John Alden made additional payments to First Choice Medical Walk-In Clinic of $3.75 for services rendered on September 21, 2009, and $6.75 for services rendered on October 31, 2009. Dkt. 101-1, ¶ 5.

As contemplated by the Court's order, Peterson has also filed a supplemental brief to address the significance of the two checks he submitted as evidence at the motion hearing. Peterson maintains that the two checks at issue "demonstrate the Defendants' bad faith and unreasonable conduct in belatedly paying for health care incurred in 2009, and finally, at the end of 2011." Dkt. 102, at 2. Peterson argues that the "more than year long delay in paying the two subject claims is a breach of the insurance contract and unreasonable,"and takes the position that the two checks simply represent "the most **recent** acts of unreasonableness and delay" by John Alden. Dkt. 102, at 2. From that point forth, Peterson merely reiterates the arguments he made in opposition to John

Alden's summary judgment motion. Those arguments were rejected by this Court for the reasons set forth in the March 8, 2012, Findings & Recommendation.

The Banks-Matthews affidavit establishes that John Alden properly handled and processed the two claims based on the information it had at the time. Notwithstanding the fact that the Court's order establishing the supplemental briefing schedule specifically allowed for the parties to respond to the opposition's supplemental briefing, Peterson did not do so. Dkt. 99, at 38. Peterson does not point to any evidence to contradict Banks-Matthews' supplemental affidavit. As the record thus stands, Peterson has not pointed to any evidence John Alden breached it contractual obligations or acted in bad faith in the handling and processing of these two claims. Accordingly,

IT IS RECOMMENDED that John Alden's Motion to Dismiss and for Summary Judgment be GRANTED in its entirety.

DATED this 29th day of March, 2012.

                                     /s/ Jeremiah C. Lynch
                                     Jeremiah C. Lynch
                                     United States Magistrate Judge